IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIONEL EDWARD KEARSE ) | |
| ) | |
| Petitioner, ) | C.A. No. 06-48 Erie |
| ) | |
| v. ) | |
| ) | District Judge Cohill |
| McKEAN FEDERAL CORRECTIONAL ) | Magistrate Judge Baxter |
| FACILITY, et al. ) | |
| Respondents. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that the Petition for Writ of Habeas Corpus filed by federal prisoner Lionel Edward Kearse be denied, and that a certificate of appealability be denied..

**II.    REPORT**

Kearse's habeas petition is filed pursuant to 28 U.S.C. § 2241. [Document # 1].  In the petition, he alleges that he was denied due process in his disciplinary proceedings, which concluded in a finding that he had committed the prohibited action of "Engaging in a Group Demonstration (Attempted)."  Kearse was sanctioned with: (1) the loss of 27 days of Good Conduct Time; and (2) a disciplinary transfer.  He requests that this court restore his Good Conduct Time and return him to his prior security level classification.

   **A.    Relevant Factual and Procedural History**

On March 7, 2003, Kearse was sentenced in the United States District Court for the Eastern District of Virginia to a 360-month term of incarceration, with a five-year term of supervised release to follow, for "Conspiracy to Distribute 50 Grams or More of Cocaine Base," in violation of 21 U.S.C. § 846.  He is currently incarcerated at the United States Penitentiary, Hazelton, West Virginia, but at the time of the events at issue, he was incarcerated at the Federal Correctional

1

Institution, McKean ("FCI-McKean"), located in Bradford, Pennsylvania.

On December 23, 2004, officials at FCI-McKean placed Kearse in the Special Housing Unit ("SHU"). (Document # 15, Document 2b, at p. 2). On that date, Kearse asserts, he received a detention order regarding engagement in a group demonstration (a food strike). (Document # 1 at ¶ 14a). Several hours later, he contends, another institution official approached his cell and told him to give back the detention order because it was given in error. According to Kearse, the official produced a different detention order, which informed him that he was being held in the SHU for attempting to introduce contraband into FCI-McKean. (Id.). Next, Kearse claims that on March 23, 2005, he was interviewed by Lieutenant Pfister, who informed him that the institution's investigation cleared him of any wrong doing regarding the attempt to introduce contraband, but that he now was being investigated for encouraging other inmates on December 21, 2004 to engage in a group demonstration (a food strike). (Id. at ¶ 14b).

On May 19, 2005, at approximately 3:00 p.m., authorities at FCI-McKean issued incident report number 1343349, charging Kearse with "Engaging in or Encouraging a Group Demonstration," in violation of Bureau of Prisons (BOP) Disciplinary Code 212. (Document # 15, Document 2a). According to the incident report, on May 19, 2005, at 2:30 p.m., an investigation concluded that on December 21, *2005*, at 7:30 p.m., Kearse had been involved in planning a food/work strike that was to take place on or about January 17, 2005 at FCI-McKean. (Id.). As December 21, 2005 was a date that had yet to occur, the incident report contained an apparent typographical error.

At 5:23 p.m. on May 19, 2005, the incident report was delivered to Kearse. (Id.). When asked to make a statement, Kearse stated that "it's not true, he did not do it." (Id. at 2). That same day, the incident report was suspended pending a re-write. (Id. at 3).

On June 13, 2005, the incident report was released to the investigating lieutenant for processing and a revised incident report number 1343349 was re-issued. (Document # 15, Document 2b). The revised incident report changed the date of the incident at issue to December 21, 2004, and changed the time of the incident to 5:30 p.m. (Id. at 1). In all other relevant respects, the report was unchanged from the original incident report. (Id.).

2

The revised incident report was delivered to Kearse on June 13, 2005. (Id.). When asked if he wanted to make a statement, he responded by stating that he was "in the hole" on December 21, 2004. (Id. at 2). The investigating lieutenant noted, however, that Kearse had been placed in the SHU on December 23, 2004, two days after the incident in question, and referred the case to the Unit Discipline Committee (UDC). (Id. at 2).

On June 16, 2005, the UDC heard the incident report. Kearse told the UDC that the incident report was "not true," and that he had nothing to do with the incident. (Id. at 1). At the conclusion of the hearing, the UDC referred the incident report to the Disciplinary Hearing Officer (DHO) for disposition. (Id.). On that same date, Kearse received written notice of his rights afforded to him at the hearing before the DHO. (Document # 15, Document 2c). He was also informed that his hearing would be held on the "next available docket." (Document # 15, Document 2d). At that same time, Kearse indicated that he wished to call a witness at the forthcoming hearing, and he identified a specific individual that he claimed would testify "that he was not involved in this incident." (Id.).

In his Declaration to this court, the DHO, Daniel Schneider, states that on or about September 13, 2005, Kearse asked him when his DHO hearing would take place. (Document # 15, Document 2 at ¶ 3). The DHO advised Kearse that before he could conduct the hearing, he needed to interview Kearse's witness and contact the staff representative. (Id.). The DHO indicated that he was not sure when he would be able to make these contacts, but that the DHO hearing would be held soon after the contacts were made. (Id.). Kearse informed the DHO that he wanted his DHO hearing to take place as soon as possible, and that he would waive his right to a staff representative and to a witness. (Id.).

Soon after their conversation, the DHO returned to his office and summoned Kearse. (Id.). Kearse arrived and voluntarily agreed to waive his right to a staff representative and to a witness. (Id.). The DHO then conducted the hearing. (Document # 15, Document 2e). The DHO report indicates that "Inmate waived right to staff representative." (Id.). The DHO report also indicates that Kearse did not request witnesses. (Id.).

At the hearing, Kearse told the DHO "that the report was not true and [he] was not involved

3

in encouraging others to be involved in any type of group demonstration. He stated that this whole thing was bullshit and I [the DHO] needed to do what I needed to do so he could get on with his appeal." (Id.). In his Declaration, the DHO stated that Kearse did not object to any procedural issues. (Document # 15, Document 2 at ¶ 3).

On September 22, 2005, the DHO report was issued and resulted in a finding that the act of "Encouraging a Group Demonstration (Attempted)" was committed as charged. (Docket # 15, Document 2e). The DHO explained that in support of his findings, he relied upon the report of the Special Investigations Supervisor (SIS) and statements from two confidential informants. (Id. at 2). The SIS reported that on May 19, 2005, an investigation concluded that Kearse had been involved in planning a food strike that was to take place on or about January 17, 2005. (Id.). The SIS further reported that Kearse had been observed sitting in the common area of his housing unit making plans and recruiting other inmates to participate in a food strike. (Id.). The confidential informants reported that Kearse and two other inmates were in the common area of their housing unit making plans to organize a food strike. (Id.) The DHO noted that the first confidential informant's reliability was based upon that individual's history of reporting reliable information in the past. He also noted that that informant's information was corroborated by another source. The DHO further explained that the second informant was reliable because the information in question was provided independently of any other source, and was corroborated by another reliable source. (Id.). Finally, the DHO stated that he had considered Kearse's defense that the incident report was not true, but he did not credit it. (Id.). He gave greater weight to the information provided by the SIS and the two confidential informants. The DHO sanctioned Kearse by disallowing 27 days of Good Conduct Time and recommending a disciplinary transfer. (Id. at 3).

On or around September 16, 2005, Kearse filed a Regional Administrative Remedy Appeal challenging the DHO's decision. (Document # 15, Document 1b at 1). That appeal was denied on October 13, 2005. (Id. at 2-3). Kearse filed an appeal to the BOP's Central Office. (Document # 15, Document 1c at 1). In a response dated January 11, 2006, Kearse's Central Office Appeal was denied. (Id. at 3).

Next, Kearse filed his petition in this court. He contends that his due process rights were

4

violated because of FCI-McKean officials' delay in investigating his involvement in the attempt to organize the group demonstration. (Document # 1 at ¶ 14a-b). Specifically, he contends that FCI-McKean officials were aware of his alleged involvement in the prohibited act on December 23, 2004, but that he was not issued an incident report regarding his alleged misconduct until May 19, 2005. (Id.). That incident report was rescinded that same day and reissued on June 13, 2005, which resulted in a delay of his UDC hearing, which was not held until June 16, 2005. He also asserts that the evidence relied upon by the DHO was insufficient to support a finding that he committed the prohibited act. (Id. at ¶ 14c).

### B.    Subject Matter Jurisdiction

Initially the court notes that, although a challenge to a federal sentence *as imposed* must be made under 28 U.S.C. § 2255, a claim concerning execution of a federal sentence by federal prison and parole authorities is properly brought under 28 U.S.C. § 2241. Bennett v. Soto, 850 F.2d 161 (3d Cir. 1988); Gomori v. Arnold, 533 F.2d 871 (3d Cir. 1976). Because Kearse is challenging the terms (*i.e.*, execution) of his sentence, his habeas petition is properly brought under 28 U.S.C. § 2241.

### C.    Exhaustion

A federal prisoner seeking habeas relief under 28 U.S.C. § 2241 first must exhaust administrative remedies before bringing his or her claim to federal court. United States v. Wilson, 503 U.S. 329, 334-35 (1992); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir. 1996). The BOP is the agency charged with administering the federal prison system, Wilson, 503 U.S. at 334-35, and for all federal prisoners challenging BOP determinations, the initial venue is the administrative process. The BOP codified its Administrative Remedy Program in 28 C.F.R. Part 542, which provides detailed procedures and guidelines for federal prisoners to seek administrative review of any aspect of their confinement. Kearse pursued an appeal of the challenged action through all levels of administrative review and, hence, available administrative remedies have been exhausted in this case.

**D.     Discussion**

This court's analysis of Kearse's claims begins with the United States Supreme Court's decision in Wolff v. McDonnell, 418 U.S. 539 (1974), which is the seminal case concerning the due process rights of federal prisoners during disciplinary proceedings. In that case, the Supreme Court noted that a prisoner's accumulation of good time credits, which can affect the length of his incarceration, may give rise to a constitutionally protected liberty interest. Wolff, 418 U.S. at 556-57. However, the Supreme Court noted further that this does not entitle prisoners to the full panoply of rights afforded a defendant in a criminal prosecution when these credits are forfeited pursuant to a prison disciplinary proceeding. Id. Instead, a prisoner is entitled only to procedures sufficient to ensure that the protected interest (i.e., good time credit) "is not arbitrarily abrogated." Id. at 557.

In Wolff, the Supreme Court enumerated the following five procedural safeguards that are required in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) written notice of the charges 24 hours in advance of the disciplinary hearing; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or if complex issues are involved; and (5) a written decision by the factfinder as to the evidence relied upon and the rational behind the disciplinary action. Id. at 563-72.

The BOP also has established regulations that set forth the procedures for disciplinary actions. These regulations track the requirements set forth in Wolff, and in some respects exceed the required process set forth in that case. See 28 C.F.R. §§ 541.10-22. Under the relevant agency regulations, when BOP staff consider informal resolution of an inmate violation of BOP rules and regulations to be inappropriate, an incident report must be prepared. 28 C.F.R. § 541.14(a). Staff must investigate the incident promptly, unless circumstances beyond the control of the investigator intervene. 28 C.F.R. § 541.14(b). Additionally, staff shall give each inmate charged with violating a BOP rule a written copy of the charge(s) against him or her at the beginning of the investigation and ordinarily within 24 hours of the time staff become aware of the inmate's involvement in the

6

incident. 28 C.F.R. §§ 541.14(b)(2) & 15(a).

Upon the completion of the investigation, the incident report may be referred to the UDC for an initial hearing. 28 C.F.R. § 541.15. Ordinarily, the initial hearing shall be held within three work days from the time staff became aware of the inmate's involvement in the incident. 28 C.F.R. § 541.15(b). However, the UDC may extend time limits set forth in the regulations for a good cause shown by the inmate or staff. 28 C.F.R. § 541.15(k).

After the hearing, the UDC may either reach a finding as to whether a prohibited act was committed or refer the case to the DHO for further hearing. 28 C.F.R. § 541.15(f). The regulations provide an inmate with the following rights before the DHO: (1) no less than 24 hours advance written notice of the charges; (2) a full time staff member to represent him at the DHO hearing; (3) the opportunity to make a statement and to present documentary evidence and witnesses; (4) the right to be present through the DHO hearing; (5) the right to have the DHO consider all evidence presented at the DHO hearing; and (6) the right to a written report of the DHO's findings, the DHO's decision, and the specific evidence relieved upon by the DHO. 28 C.F.R. § 541.17.

### 1.     **Kearse Was Not Deprived of Due Process**

Kearse has failed to establish that he was denied any process due to him under the Due Process Clause or under applicable BOP regulations. He alleges that the delay between the time FCI-McKean staff became aware of his involvement in the incident regarding the group demonstration and the time he was issued the incident report violated his due process rights. There are several problems with this claim. In Wolff, the Supreme Court did not place specific time restrictions in this aspect of the inmate discipline process. The due process requirements set forth in Wolff require that an inmate receive written notification of the charges against him 24 hours prior to a hearing. It cannot be disputed that Kearse received such notice in this case.

As for the BOP regulations, which are broader than the due process requirements set forth in Wolff, Kearse was entitled to receive written notification of the charges against him at the beginning of the investigation, and ordinarily within 24 hours of the time staff became aware of his involvement in the prohibited conduct. 28 C.F.R. §§ 541.14(b)(2) & 15(a). The evidence

7

demonstrates that the staff became aware of Kearse's involvement in the planning of a group demonstration on May 19, 2005 at 2:30 p.m., and that Kearse was issued the incident report on that same date, at 5:23 p.m. Docket # 15, Document 2a. Accordingly, Kearse received notification in compliance with the regulations. Although Kearse may be dissatisfied with the fact that the initial incident report issued to him contained an erroneous date and time and was suspended and then reissued on June 13, 2005, that circumstances does not change the fact that Kearse did receive notice of the charge against him within 24 hours of the staff becoming aware of his involvement.

Kearse also contends that the staff was aware of his involvement in the prohibited action on December 23, 2004, because he claims he was served on that date with a detention order regarding a food strike, which he claims was rescinded that same day. There is no evidence to support that allegation, however. (See Document # 15 at 10 n.3). Indeed, the May 19, 2005 and June 13, 2005 incident reports expressly refute that allegation, as each report reflects that the staff became aware of Kearse's involvement in the incident on May 19, 2005. And, as Respondent explains, incidents like a group demonstration may comprise a number of different inmates committing various prohibited acts, the totality of which may not be known prior to the completion of the investigation. Thus, it is possible for an inmate suspected of being involved in a group demonstration to be placed in the SHU well before staff actually become aware of the inmate's involvement in a specific prohibited act or acts.

To the extent that Kearse is arguing that his due process rights were violated because he did not receive his UDC hearing until June 16, 2005, that claim too lacks merit. In Wolff, the Supreme Court did not place specific time restrictions on this aspect of the inmate discipline process. Moreover, although the BOP regulations contemplate a UDC hearing within three work days from the time staff became aware of the inmate's involvement in the incident, it is not mandatory that a hearing be conducted within that time frame. 28 C.F.R. § 541.15(b) & (k). Here, the institution staff became aware of Kearse's involvement in the incident on May 19, 2005; however, the incident report was suspended on that date and was reissued on June 13, 2005. Kearse received his UDC hearing within three days of the re-issuance of the incident report, and thus the institution officials substantially complied with the BOP regulations. (See also Document # 15, Document 1c at 1, 3).

8

In any event, even if the UDC hearing was held outside of the time frame set forth in regulations or if the institution officials delayed in providing Kearse with the incident report, Kearse is not be entitled to habeas relief. He has failed to demonstrate that his defense to the charge was prejudiced in any way by a delay in the disciplinary process. Cf. Chong v. INS, 264 F.3d 378, 389-91 (3d Cir. 2001) (the Board of Immigration Appeals' violation of INS regulations did not entitled petitioner to habeas relief; because the regulation in question was not grounded in any underlying fundamental constitutional or statutory right, the petitioner must demonstrate prejudice to warrant reversal) (citing with approval Waldron v. INS, 17 F.3d 511 (2nd Cir. 1993); see Von Kahl v. Brennan, 855 F.Supp. 1413, 1421 (M.D. Pa. 1994) (citing Waldron and noting that in a federal inmate disciplinary proceeding "where the minimal requirements of due process have been met, an inmate must show prejudice to the rights sought to be protected by the regulation claimed to be violated" in order to obtain habeas relief).

### 2.     The DHO's Determination Was Supported By the Requisite Degree of Evidence

Kearse also challenges the DHO's finding that he committed the prohibited act of "Encouragement of Group Demonstrate (Attempted)." It is well settled that the decision of the DHO is entitled to considerable deference by a reviewing court and the decision must be upheld if there is "some evidence" to support the decision. Superintendent v. Hill, 472 U.S. 445, 454-55 (1985); Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying Hill standard to federal prisoner's due process challenges to prison disciplinary proceedings). Once the reviewing court determines that there is at least "some evidence" to support the findings of the DHO, the court must reject the evidentiary challenge by the petitioner and uphold the finding of the DHO. Id. "Ascertaining whether [the] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence." Id. at 455-56.

Reviewing the evidence as recited in the statement of facts section, supra, the court finds that there was "some evidence" to support the DHO's decision. Specifically, the DHO relied upon the SIS report and the confidential information supplied by two separate sources. Docket # 15,

9

Document 2e.  Here, aside from Kearse's denial of any involvement in the incident in question, there was no exculpatory evidence before the DHO.

Kearse argues that the DHO failed to consider video surveillance; however, it has not been established that there even was video surveillance.  Kearse also argues that he told members of his unit team that he was participating in a basketball game at the time he was observed encouraging other inmates to participate in a food strike.  Yet, the evidence shows that he failed to assert this alibi, either directly or through witnesses, to the lieutenant who investigated the incident, the UDC, or the DHO. (See Document # 15, Documents 2a, 2b, & 2e).  And, at the DHO hearing, Kearse specifically waived his right to witnesses to assist in his defense and did not raise any procedural objections at the hearing. (Document # 15, Document 2 at ¶ 3; Documents 2d & 2e).

In conclusion, the DHO's decision in this case is supported by the requisite evidence and, accordingly, may not be reversed by this court.

### E.    Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253(as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  Amended Section 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."   Where the federal district court has rejected a constitutional claim on its merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong..."  Szuchon v. Lehman, 273 F.3d 299, 312 (3d Cir. 2001) quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000).  A petitioner meets this standard if he can show that the issue "is debatable among jurists, or that a court could resolve the issue differently, or that the question deserves further proceedings."  McCracken v. Gibson, 268 F.3d 970, 984 (10th Cir. 2001).  Under 28 U.S.C. § 2253(c)(3), the district court must identify which specific issues satisfy the standard.

However, federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement.  United States v. Cepero, 224 F.3d

256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).

### III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied, and that a certificate of appealability be denied.

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

/s/Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge

Dated: March 20, 2007